Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is number 152298 United States v. Joseph J. Kennedy. May it please the court. Good morning Mr. Cruz. Good morning Justice Toria. I am assisted today by Attorney Amy Barsky who will be helping with the argument, Your Honor. And I would take a quick moment to ask for leave to reserve three minutes in the aggregate for rebuttal if the court would agree. You may. Thank you, Your Honor. Your Honors, with regard to, I'm going to be arguing or speaking for a few minutes about the suppression issue. With regard to this particular issue, whether we are talking about the court, the district court's probable cause analysis as it relates to evidence of the crime being found in the Honda Fit, and whether it relates to the theory that the court used secondarily as to the Honda Fit being an instrumentality of the offense or the violation in Quincy, I would suggest that there's one common thread that undercuts both of these conclusions by the district court, and that is that the information specifically linking the car to the theft in Quincy was never articulated, specifically communicated to the Boston police officers who were doing surveillance in Watertown when Mr. Kennedy was arrested. Specifically with regard to the probable cause analysis as it relates to evidence of the crime in the car, I would suggest to the court that the district court's conclusion that the bulletin notifying the police in Watertown that Mr. Kennedy was involved in a theft in Quincy juxtaposed to the description of the car does not in and of itself lead to probable cause to believe the gun safe or any other evidence of that theft would be found in the Honda Fit, at least as it pertains to the perspective of the Boston police officers who were on the ground actually engaged in the arrest of Mr. Kennedy. What about what they saw when they looked in the window of the car? Well, what they saw when they looked in the window of the car was a box-like object that was completely covered, at least from the perspective, or at least that's what the district court concluded, that plain view was not a justification to enter into the car. That, in and of itself, I would suggest to the court, does not augment the probable cause analysis. It's not unusual. Why not? I'm sorry. Why not? If you know somebody has been involved, you have a report, somebody's been involved in a larceny or robbery, and then you see something in the car that might be the fruits of that robbery, why isn't it reasonable to then conclude maybe... Again, there are a couple of issues there, Your Honor. First of all, it's not unusual for a box-like object that is unidentifiable to be in the back of a car. That's just a general observation. Secondly, Your Honor, there's a 10- to 12-hour time span, which runs from the time that the theft in Quincy is reported up until the time that Mr. Kennedy is arrested in Watertown. Go ahead. No, no, you go ahead. What is the report they received about... What did they know about the offense that supposedly had occurred prior, the officers who were on the scene with the car? Yes, what they knew about that, Your Honor, was that Mr. Kennedy was reported to have been involved in the theft of a safe in Quincy. Right, so then wouldn't it be enough if the thing they saw in the car reasonably looked like a safe? I would suggest not, Your Honor. Why not? I mean, suppose they saw a safe. Yes. Would that not be enough? I think that clearly would be enough. Okay, so now they see something that reasonably looks like a safe. Why isn't that enough? Well, because I don't think that a box-like object that's completely covered but for a sliver of gray is necessarily identifiable as a gun safe. No, I'm just not saying it's necessarily. I'm just saying is it reasonable to think it might be the safe? I think it is reasonable to... Strike that. I think that it is reasonable for the officer's curiosity to be piqued, and I think it's reasonable under those circumstances for that officer to seek more information, more detail about the theft in Quincy in order to confirm any suspicion or any theory that he may have about whether or not that is actually the safe that was involved in the theft. Did they have a description of the car at that point? What they had was grey Honda Fit and a license plate number, and that's the car that Mr. Kennedy was expected to be driving, quote-unquote. And wasn't that the car that they found? They found that car. They were waiting for Mr. Kennedy in Watertown because they knew he lived in that particular area, so it wasn't an unusual thing for him to be driving that car as it belonged to his girlfriend who also lived at that particular address. But wasn't it also the car involved in the burglary? Well, that's the issue, Your Honor. It was not connected to the burglary or the theft. It was described in connection with that theft. It was not stated or articulated to the Boston police officers on scene that the car was used as a getaway car or to transport items away from Quincy that were involved in that theft. But he was associated with the theft. They knew it was him. They knew it was him. So they stopped him. He then tries to run. Well, they stopped him. He had already gotten out of the car at that point, parked it legally. He ran. They stopped him. I think at that point, based on the information they had from Quincy, they had every right to detain him, ask him questions about his identity, whether or not he'd been in Quincy, et cetera, and they had time to bring the victim in the case or the complainant to the scene to identify the car, et cetera, look inside from the outside to see if he recognized any items that he was missing. They didn't do any of those things. Suppose they hadn't searched the car at all and they just told it. What was going to happen then? Well, I think that they would have had a problem, and that's part of what I argued to the district court, which is that there was no reason to tow the car at that point if what they were towing it for was some traffic violation, that it was parked illegally, et cetera. None of that existed at that time, and the registered owner of the car was on scene to take it into her possession if they chose to give it to her. But they didn't. They could have towed the car and gotten more information about the theft in Quincy, sought a warrant, brought the complainant to take a look at the car, et cetera. They could have secured the car, in other words, by towing it or right there at the scene, and they chose not to. They went directly into the car, confirmed their suspicions, investigated whether or not this was the safe, and, of course, when they opened that door, they saw the safe clearly, and any confusion or any ambiguity about what the nature of that object was was revealed immediately at that point. So my suggestion to the court is that, with regard to the probable cause analysis, they just didn't have enough at the time. If all we're talking about is the bulletin. Your time is up. Thank you, Your Honor. Unless you want to use your reserved time. Just the same argument replies with regard to the instrumentality theory. Probable cause to believe it was the getaway car doesn't exist under the circumstances. It's all they're going with is the bulletin. When I say your time is up, does it mean you have to continue your argument? I'm done at this point. Thank you. Okay. Ms. Barsley. Good morning, Your Honors. I'm going to address the sentencing issue in the case. This court has probably dealt with deciphering these Massachusetts statutes more than it would like to, so I'll try to focus on what's new in this case. Up to this point, the court has found that Massachusetts ABDW is a divisible statute, that the intentional form qualifies as a violent felony and the reckless form does not. In order for a defendant's conviction to be used as a predicate under the Armed Criminal Act, then the government must produce record documents that establish with certainty that the defendant was convicted of intentional ABDW. When you say we found it a divisible statute, have you said in all circumstances? At all times? It's a great question. I have not seen any precedent for the idea that a statute could be divisible, you know, per case in some instances and not divisible in other instances. The documents in this case show exactly the reason that thinking about it in that way makes sense because the documents don't make clear what was charged, what was contemplated by the judge, what was admitted to elementally by the defendant, and in that way it resembles an indivisible statute. The way I understand this works, it becomes divisible if you ask for a certain jury instruction. Is that basically the idea? In other words, if you ask the jury to be instructed, the defendant asks in a jury trial case for the jury to be instructed as to recklessness or intentional, then the jury has to find one or the other. But in the absence of the instruction, the jury can split among those theories any way it wants and it's still a valid conviction. Is that right? So I think in a jury trial, the defendant can request a unanimity instruction, and this is the difference between Tavares and Faust as far as whether it's required to so find unanimously. But yes, you're right. But when you request the unanimity as to one of the two theories? Yes. Yes. Okay. So the thing that's just, just so I follow the logic of it, in a plea case on your theory, how could it ever qualify? Just practically speaking, can you ever plea to ABDW in a way that could be a crime of violence? You can be convicted of it at a trial. Right. But I take your position that you can't plea to it. What would be a situation in which you could plea to it? What would that look like? Okay. So I think if the charging document specifies one form or the other. And do you know if they ever do? Does the model charging form refer to it? Is there ever a case in which it does refer to it? I don't believe that they do as a matter of practice. If the judge of the colloquy were to charge the offense as an intentional ABDW, or to specify the elements of the offense. And in de comp, there's a statement that a prosecutor would be expected to read off the elements of a divisible offense, would be expected to read off the elements of that particular form of the offense. I'm just trying to think here, though, the only reason, since it's a unanimity instruction in a plea, that's just never going to arise. That doesn't necessarily hurt your case. I'm just trying to understand practically speaking how this works. I mean, I think it makes the divisibility finding problematic. Because if you took away the fact that this court has found it to be a divisible statute, and you looked at this set of documents under step two, which is a divisibility analysis, you would say it's indivisible. There's absolutely no sign that either form was contemplated or selected, and that a finder of fact had to choose one form or the other beyond a reasonable doubt. But you agree that if there was a unanimity instruction requested, it then becomes divisible? In a trial. Yeah. Yes. Okay. Well, it becomes, whether it becomes divisible under the categorical approach, it certainly, the jury has to choose. And I think at that point, you can bring up, the government can bring up the jury instruction and say, look, he was convicted of this offense. Here there just isn't proof that either that offense was charged, that the judge had it in mind, because the judge made no reference to it, that Kennedy was informed there was such a thing as an intentional ABDW versus a reckless ABDW. Okay. Just one last question. Suppose the charging document here, I'm sure this is hypothetical, but had charged it as reckless, and this exact same plea colloquy happened and he pled. Let me make it easier. He pled, I intentionally kicked the person. Does that count still as the offense? Of intentional ABDW? It's charged as reckless. Okay. And he pleads that I intentionally kicked him. Is he guilty of reckless? I think he's guilty of reckless. Yeah. In this case, you have evidence of an injury. Yeah. So you don't have that issue to deal with. And I think because reckless is clearly a lesser mens rea than intentional, anything above recklessness is superfluous. I think the logic of your argument is that even if in the plea colloquy the facts, as he agreed to, were unambiguously intentional, in other words, he asked where the guy is, he announced he was going to go beat him up, he went and dragged him out into the street and beat him for five minutes. I think the logic of your argument is that would still not be a conviction for the intentional version. So I think that my first argument is that, yes, in the absence of being charged of the intentional form, an admission to it is not an admission. Well, when you say admission to it, what are you talking about? A factual admission to intent. But secondly, there is no factual admission to intent. I didn't describe a situation where he admitted that his intent was intentional. I described a situation in which he admitted facts where it was unambiguous to an interpreter, those facts, that he was acting intentionally. Are you saying there's no difference between those two? Well, I think there's a difference, but I think even if my position is that unambiguous facts would support a finding of a conviction of an intentional ABDW, this case isn't unambiguous and that the ambiguity in this case is too big to allow the court to step in and find intent. But do you also argue that if we disagreed with you on that point, you'd still win? Could you explain the question? Yeah. If we disagree with you on that point, in other words, we think it's not ambiguous, do you still win? I think we do. So that's saying that in the end, your position is, even if there's perfect clarity, that what happened was an intentional offense. There's no other way to interpret what he's pleading to. Because it wasn't charged and because the elements were never described as saying what you're pleading to is the offense of intentional ABDW, we have to presume that he was convicted of reckless ABDW. Well, there's a difference between facts that the court thinks are unambiguous and an actual question. Did you intend to strike? Answer, yes. Well, suppose he says that. Suppose he says, I intended to strike him. If the charging document said the offense is reckless, all he can ever plead to, no matter what he says his intention was, is reckless, right? If the charging document says reckless. Now, if the charging document is just ambiguous. If it doesn't specify, I would say. Then why does it matter on your theory if he says, I intended to kick him? Because it's evidence at least that the judge is contemplating that offense by asking the question. Suppose the judge says, what did you do? And the defendant says, I intended to kick him. And the charging document is ambiguous. For our purposes, if he admits to the element of intent, that could be sufficient and we would still win. What about sentencing? I know there's not a breakdown in the statute. You get sentence X for one thing and sentence 2X for another. But is there any incentive that he would have to deny an overstatement of the facts that made it look intentional because he was looking down the road towards sentencing and feared that the discretionary component of the sentencing might lead to a larger sentence if he agreed to facts that were intentional? I don't think so. I don't think he has any incentive, which is the problem that this court has repeatedly mentioned as well as the Supreme Court, that he has no idea this is coming. He has no reason to contest the facts. Here his answers to the court's questions are unintelligible. So he may have looked at his attorney and said, wait a minute, I didn't do that. Or the other guy did it. It's unclear who did what. And the lawyer would have said it doesn't matter. Does he have an incentive in the opposite direction? In other words, is it to his benefit potentially? I just don't know under Massachusetts law. If he seems very remorseful, very accepting of the worst possible account of the crime, can that possibly help him under the guidelines like substantial assistance or acceptance of responsibility? I don't know the answer to that question. I could figure it out and supplementary brief it. Thank you. And the final point that I want to address is that under the modified categorical approach, the Supreme Court has made clear it's not an exception to the categorical approach. Your time is up. Okay. Thank you. Thanks. Good morning. Good morning. My name is Randall Crum on behalf of the government. To pick up with the last issue first, I think the way we have to start is what the Supreme Court has said that needs to be found in order to apply the ACCA. And going back to Shepard, what they've described it as is not specifically admitting to the elements as elements, but admitting to the facts that necessarily show that you committed the crime in the way that is a predicate form. According to Taylor here, it says, ACCA must rest on a showing that a prior conviction necessarily involved in a prior plea necessarily admitted, facts equating to generic burglary. Suppose the charging document here charged him with the reckless form of the offense. And he, in the plea colloquy, says, I intended to kick him. Do you think it's a crime of violence then? I think it is. And I think the reason is that Shepard doesn't say that you're limited to one document or you have a group of documents you can look at. And it would depend, I suppose, on the context in which how clear the admissions were. But in a case in which they necessarily admitted the facts as the basis for the plea, Would they charge somebody with larceny and they say at the plea colloquy, I robbed him? He's now guilty of robbery? That can't be right. Well, if the document, if it so undermines the validity of the plea. Here it so undermines if the charging document said reckless. That would undermine the idea that the conviction was for the intentional variant. Because it said he was charged with reckless. Certainly. And perhaps that is a case that we don't have quite here of direct opposition between one document and another. I think that would be a difficult case under Shepard because Shepard says you can look at a group of documents. It just shows that you can't measure the, what the person says they did can't tell you what offense they're convicted of. You have to know what they're charged with. Right. Well, again. So what is he charged with here? We don't know because the charging document is ambiguous. Well, no, but again, Shepard doesn't limit you to the charging document. If it said that the only ones that can be divisible are ones where the charging document specifies one or the other, that would be a different version of Shepard. What Shepard says you can look at the plea colloquy. That's because in many other situations you'd have much more to align with the, like you'd have a charging document, you'd have a jury instruction, you'd have a special verdict form, you'd have a unanimity requirement under Massachusetts. So the charging document could play a helpful role and its ambiguity could be resolved by those. The problem in a police setting is we don't have any of those other things. So a person's been charged with the two together that subsumed each other. How do we know what he's pleading to? Well, I mean, I guess we'd go back again. Taylor and Shepard allowed for the possibility that a plea could be used, that analysis could be used, a modified categorical approach could be applied to resolve precisely that ambiguity. The question was if the charging document says a burglary but it doesn't say of what, that you could then look at the plea colloquy and other documents to resolve the unanswered question. But it never says that what you should look at in the plea colloquy are just the words that come out of the defendant's mouth in plea. Because you're trying to figure out not what he did but what offense he's convicted of. And his statements about his conduct under Taylor and Shepard and all these cases never tell you what he's convicted of. So a plea colloquy could be informative if the judge said, here are the elements of the offense of which you're convicted. You'd agree to those elements, but we don't have that here. All we've got is statements of conduct by the defendant. Well, again, I think what I understand to be the test is the test laid out by the Supreme Court. The Supreme Court has never said that it depends upon a recitation of the elements. Essentially, what they found is that they have to have necessarily admitted them. And while there's different ways... How can you necessarily admit to something you don't know is an element? Well, again, I recited that language from Shepard,  So it's to say, if they ask you, what did you do? I entered his house and did X, Y, and Z. There isn't a suggestion, at least I found no case that says that that would be insufficient unless the court had also said, and let me tell you, this is an element of the offense. Was it a house, boat, et cetera? It would appear to be. Again, I haven't found a case in the country that says that in the absence of some further specification,  Aren't there cases where someone engages activity, and technically they've rung up seven or eight different crimes that you can find in U.S. code or state law, but they then do a plea bargain, and they plead only to a single crime, like lying. And then if the plea colloquy, the prosecutor or the PSR or whatever recites what they did, and they say, yep, that's what I did, have they just pled guilty to those other five crimes that the prosecutor decided not to charge? I don't think so. No. No, they have not. And that's because, again, I think it comes down to there's definitely a high standard of demand for certainty, and that is embodied in the word necessarily admitted. If they've pled down, then they haven't necessarily admitted to other things that they say they did. But if you just look at the plea colloquy, that's all I looked at, the prosecutor describes all the facts, and he said, yep, that's what I did. So he necessarily admitted to those facts, but he hasn't admitted, there hasn't been a conviction for those other non-charged. The only difference here from that example I gave is that the indictment itself is ambiguous as to whether it's charging those other things. Well, but in this case, it's not as ambiguous as all that, because we do know that it's assault and battery with a dangerous weapon and aggravated assault and battery. It's not as though it also charges a host of lesser-included offenses. Why does that matter? There's two possible offenses, one of which you concede does not qualify and one which does. Correct? Reckless form, yes. Right. We don't know which of the two was charged, correct? It was charged in such a way that it could encompass both, yes. Okay, so then the question is, did anything at the plea colloquy tell us what was being charged so that we would know what he was being convicted of? And you're saying we can see just from the statement of what the guy says he did that we know what he was charged with and, therefore, what he was convicted of. That's just Judge Hayato's hypothetical. Well, again, and again, I want to bring it back to what I think is a more apt analogy, which, again, is tailored. The situations of a burglary where the house qualifies but the garage does not. And, again, I'm unaware of a case that holds. You're not aware of a case that goes the other way either. Well, to be sure, we were arguing based on the Massachusetts law, and I don't know of a case. You don't know of any case in which there's an ambiguous charging document, a plea, and we resolve the ambiguity simply by looking at the facts stated by the defendant as to his conduct. Well, the facts admitted relevant to the offense charged. You still don't know of a case, correct? Yeah. As I'm standing here, I don't have a case in which that is. So there's just no case either way. But that's what Taylor says the test is. Again, I mean, we could supply cases that apply Taylor's rationale. But Taylor was the charge ambiguous? Well, yes, the problem was they didn't know what he had entered. The dwelling would qualify, but other things were not. And Taylor was a plea case? I believe Taylor was a plea case. And so what did they look to to resolve the ambiguity? Just the facts of what he said? It was redundant. I mean, the Supreme Court did not resolve that issue, and I don't know how it was resolved. But I guess the point is the analysis, as I understand it, was to seek in the face of precisely this circumstance, an ambiguous charging document. Figure out from the plea colloquy what happened. Figure out which of the forms they admitted to. But Taylor doesn't tell us how to go about doing that resolution. No, it does not. And, again, but that's the test we have at this point. And what I tried to point out in the briefing is that nothing that's come since to comp Mathis, they continue to cite Shepard and Taylor to lay out this analysis. They don't. Part of the problem here may be, I mean, in Taylor or in robbery versus burglary, you've got clearly divisible different offenses. Part of the problem we may have here was with Massachusetts ABDW. As you can tell from our opinions, we've not fully crossed the Rubicon of exactly when and everywhere is it even divisible because of the way Massachusetts has treated it. So when you have an offense like that where its divisibility is itself questionable, it becomes a lot harder to look at the facts that are admitted to because what incentive did the person have to deny certain facts that would draw a difference between one and the other? I do think it's important to separate the two questions, though, of divisibility versus proof of which form was admitted to. Clearly, under this Court's precedent, those are steps two and three of the analysis. Mathis lays it out the same way. First, you have to figure out as a matter of law whether this is a divisible statute, and then you figure out which one the person necessarily admitted to. But suppose what we're saying is to determine whether this is divisible or not, we need to look at whether the model jury instructions were given, all right? Because if they were, then we know, and there's a unanimity requirement, then we can say it's divisible. If they weren't, then we have the problem that Faust and Tavaris go back and forth on it. When you have a place setting, you don't have any of those tools. I do think, though, that the question as laid out in Mathis of divisibility has to be sort of logically prior. You have to first figure out whether as a matter of law it is the kind of statute. I mean, because it's not viewed under Mathis as something that would change case to case. The ability to show what form the person was convicted of may well change case to case, will change case to case, based on Shepard documents. But the first question is, was this divisible at the time of question? What would happen? Suppose we're in a jury trial case with ABDW, and there's no unanimity instruction requested. So in that case, we would not have a – that wouldn't answer the divisibility question, but it may be impossible to show which form was the person was convicted of. It may be or it would be. It would be. So why wouldn't – Under Tavares. So what we wouldn't do is go review the record and try and figure out what did the jury think he actually had done. We wouldn't look at his testimony. Suppose he testified at trial, and he admitted everything that he's admitting in the plea. We wouldn't say then that because he said that at trial, it must have been for the intentional variant. Right? Because the jury's verdict, yes. Yes, right? So how is it any different at the plea? We're in the exact same situation. We don't have a unanimity instruction. It's just the same thing. Well, you'd never have a unanimity instruction. Exactly. So the question – We don't have one. So how is it different? Well, no, the question is, does the modified – If he testifies at trial, and there's no unanimity instruction, to the same thing he says in the plea colloquy, you concede it's not a crime of violence. Right, because – How can it be then that if he pleas, it is a crime of violence? That doesn't make sense to me. Because the two tests are different. I mean, the way that you apply the modified categorical approach in a plea context and the way you apply it in the jury context are different. When it's a jury verdict, you look to the verdict. That's the final resolution of the matter. But the Supreme Court has held that you can apply it in the plea context. So it can't be a matter of simply because we don't have a jury verdict in a plea, we can't ever find that the person has admitted to it, or we would never be able to use the modified categorical approach in a plea context. The question is, what is enough? What is sufficient to meet that necessarily admitted standard? And, again, I think this Court did summarize what I think is the correct standard. We think this is the correct standard in Martinez, which is if they necessarily admitted to the conduct that forms the basis of the predicate form. Well, you make the good point that if you're going to have it in the plea context, then there needs to be some arguable way to get there. But don't you still need an added element that would substitute for the unanimity requirement? In other words, you need something more than the recitation of the facts and a lack of a context about the facts. You would need in the plea setting the judge saying, do you understand you're pleading to the intentional form of this offense? And the person stipulates that they are. Then you could cite to that as a substitute for the unanimity requirement. But when we don't have the unanimity requirement and we don't have that, we're left only with the facts. And it seems we all agree that the facts themselves wouldn't be enough in the verdict setting, so why should it be here? Well, and, again, I think I agree that there needs to be some sort of parallel, but our view is that the standard is met at the point, and Your Honor has asked this in a question to defense counsel, at the point at which there are unambiguous facts, the point that they can only be understood as an admission to the predicate form. But that's the point at which there is sufficient evidence to meet the modified categorical approach. The logic that should apply then in the scenario that Judge Barron poses, which is at trial, there's no unanimity requirement, but the defendant admits to unambiguous facts. He admits to exactly what he admits here. Why would we not find a crime of violence in that situation, and yet would when there's actually less information here? Well, in a jury context, the jury is the trier of fact. I mean, in this case, it's the plea, the judge's duty to accept the plea. Who's the trier of fact here? Well, the judge has an obligation to find sufficient facts. And what did the judge tell us as to what his view of the elements of the offense were? He didn't specify what the elements were.  Well, again, that's the question. I don't think that's the answer to the question. Because what would be a reason to conclude that when the judge is silent as the trier of fact, just like the jury was silent as the trier of fact, we should presume that the judge must have meant the intentional variant, even though we presume the jury meant the reckless variant? Well, again, I think it comes back to the same question, is what is necessarily admitted to the facts underlying the predicate form mean? And in our view, when the facts unambiguously show that the predicate form occurred and the defendant admits to those unambiguous facts, and we do think that in this case they fall into the category of unambiguous because the course of conduct as a whole cannot be viewed as anything other than intentional, then once they admit it to them, they have admitted to the facts within the meaning of de Camp and Mathis and the cases that say that.  I want to make sure. You don't disagree that if this charged reckless conduct and he admits only to intentional conduct that he's guilty of the reckless variant? I think that that complete separation between the two would make it impossible, would likely make it impossible to find. Again, it's hard to say that outside of context. If he was specified that the crime was the intentional form by the judge, then you would have a question of inconsistency between the charges. If it charged him with reckless and at the plea all he says is, I intended to do it, I did it intentionally, he's still guilty of the reckless variant. Without more, then I would say yes. Okay. Thank you. I just want to speak briefly to this idea that we could have a theory in which a defendant who pleads guilty is disadvantaged as compared to a defendant who comes to trial. And I think your Honor, Judge Kayada alluded to this, that frequently the defendant is pleading guilty because he's getting the benefit of a bargain. It can't be that if he then admits to facts that exceed what's required for the conviction, he's deprived of the benefit of that bargain. And the court in de Camp spoke to that. I also want to say that another lens through which we can look at this is that the court has repeatedly said that the modified categorical approach is not an exception to the categorical approach. It's just a tool for implementing that approach. And the government's view blows that out of the water by essentially saying that the modified categorical approach gives the government license to start parsing the facts. Thank you. Thank you.